Dieterich, J.
(dissenting). The defendant appeals from a conviction on two counts of burglary and two counts of theft. The trial was had to the court without a jury and neither the defendant nor any witnesses in his behalf testified at the trial. The objections presented upon appeal can be resolved into one issue: Does the evidence in the record sustain the convictions on the four above-mentioned counts of burglary and theft?
The defendant was charged with the following offenses:
(1) Burglary of the Walter Richmond premises in the city of Eagle River on or about August 24, 1958. Court found defendant not guilty.
(2) Burglary of the Harry Seifert Standard Oil station in the town of Conover, Vilas county, on August 26, 1958. Windshield-wiper blades and four batteries were stolen from *143 said premises on said occasion. Court found defendant not guilty.
(3) Burglary of the Glen Struck Service station in the town of Conover, Vilas county, on August 31, 1958. Found guilty.
(4) Theft of a screw driver, four-way tire wrench, tire iron, and two auto tires from the Struck Service station and $7 in cash. Found guilty.
(5) Burglary of the Henry Mitchell Service station in the town of Land O’Lakes, Vilas county, on September 2, 1958. Found guilty.
(6) Theft of $45 in cash and a screw driver from the Mitchell Service station. Found guilty.
(7) Burglary of the L & K Sinclair station in Eagle River on August 23, 1958. Found not guilty.
(8) Theft of $50 in cash from the L & K Sinclair station. Found not guilty.
The following statutes are involved in this appeal:
Sec. 943.10 “Burglary. (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than ten years':
“(a) Any building or dwelling; . . .”
Sec. 943.20 “Theft. (1) Whoever does any of the following may be penalized as provided in sub. (3) :
“(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.”
This case is based solely on circumstantial evidence. It is recognized that most cases of burglary rest, to a very great extent, if not solely, on circumstantial evidence. This is so since persons so plying this course of nefarious conduct do not do so under the obvious scrutiny of potential witnesses, at least not intentionally; on the secrecy of their actions and usually the mantle of darkness depends the success of their operations.
*144 While recognizing this situation resulting in the sometimes enormous difficulty of apprehension of these criminals by law-enforcement agencies, we must never lose sight of the “cloak of innocence” which every person carries who is prosecuted for crime. Every person is presumed to be innocent until his guilt is proved beyond a reasonable doubt. It is not for the accused to prove his innocence. In fact, the accused need offer no defense. The evidentiary facts propounded by the prosecution must be sufficient in themselves to prove guilt beyond a reasonable doubt.
These principles apply to all men, in all circumstances. It is not the function of a court in criminal proceedings to determine whether a person, because of previous conduct, or any other reason, should be withdrawn from society. Rather, it is the function of the judiciary, within its limits of fallibility, to determine whether the facts, as adduced, including inferences which may be reasonably drawn therefrom, prove beyond a reasonable doubt that the accused is guilty of the crime charged in all its elements and therefore should forfeit his freedom.
It is a matter of the gravest importance whenever the question of the freedom of an individual is to be decided upon. The denial of such freedom by reason of conviction of a crime necessarily places a high burden of proof on those seeking to curtail that freedom. That burden should not be an unreasonable one since the protection of citizens in a society also merits careful consideration. As a result, where a crime has been committed unseen by witnesses and hence unprovable by direct, positive evidence, the law recognizes that guilt may be proved solely by circumstantial evidence.
However, where such proof of guilt rests solely and entirely upon circumstantial evidence (as is admitted this case does), such proof must be of such a convincing quality that *145 a reasonable person would exclude, to a moral certainty, any other reasonable explanation of such facts inconsistent with the guilt of the accused.
The defendant was found guilty of the burglary of the Struck Service station and the theft of a screw driver, four-way tire wrench, tire iron, two auto tires, and $7 in cash. This conviction depends on (1) the identification of the items listed as the property of Mr. Struck, and (2) proof of entry of Struck’s station by the defendant. After testifying as to a burglary of his station on August 31, 1958, the following questions were asked Mr. Struck and he made the following answers:
,cQ. Now, I show you state’s Exhibit 1, and ask you what it is? A. A screw driver.
"Q. You recognize it? A. Yes, I do.
"Q. How do you recognize it? A. By this end here. The way it is worn. It is the one I had.
“Q. You know whether or not it is your screw driver? A. It is very similar to the one I had . . .
“Q. I show you state’s Exhibit 2, and ask you what that is? A. A four-way tire wrench.
“Q. Did.you recognize or identify that? A. Well, it is very similar to the one I had. . . .
“Q. Well, are there any other marks upon that you can use to identify that as yours? A. No, there is no other. . . .
“Q. I show you state’s Exhibit 3, and ask you what that is? A. That is a tire iron. . . .
“Q. Can you recognize that as belonging to you? A. Uh-huh.
"Q. How do you recognize it? A. Well, it is very similar the way that end is pounded over here, like the one I had (indicating). ...
“Q. Have you any other tire irons there to use? A. Well, one similar to this but it is bent up. . . .
“Q. And look at Exhibit 13, and tell the court, describe that tire to the court? A. 67 — 15 Mobil Deluxe tire.
“Q. Had you purchased that tire from Mobil? A. Yes.
*146 “Q. Will you look at Exhibit 14, and describe that to the court? A. 760-15, Mobil Super Deluxe.
“Q. Are you able to identify that as yours? A. Just by brand name.
“Q. There isn’t any particular markings on there? A. I had markings on there, they are off. The labels were marked but they are off.
“Q. Examine them closely to see if there are any marks you could identity? The Court: Don’t those tires have serial numbers? A. Yes, sir. . . .
“Q. You have your invoice here? A. Invoice doesn’t show.
“Q. (By the Court) You are not able to tell the court the serial numbers of the tires taken from your place? A. No I am not.” (Emphasis supplied.)
Mr. Struck, in his testimony, claims ownership. However, his claim of ownership is based solely upon similarity and not objective certainty.
On the basis of the foregoing testimony, I cannot conclude that any of the items were positively identified. Nor can I conclude that such identification based on similarities of distinguishing features was sufficient. In Fowle v. State (1879), 47 Wis. 545, 2 N. W. 1133, cited by the majority, the distinguishing characteristics of the stolen sheep in three particulars corresponded precisely with the description of property sold by the defendant. This is certainly not the situation in the case before us.
Mr. Arnold Grubel, a tavernkeeper at Land O’Lakes, testified:
“Q. Were you ever with him when he had any tire trouble? A. Just this one night that I drove him home we had a flat tire on the way, and with his wrench I couldn’t take off the nuts, or the nuts were rusted, and the next morning I brought him out a tire wrench. . . .
“Q. I show you state’s Exhibit 3, and ask you whether or not that was the tire iron he took out of the car that night that you were unable to use? A. I was going to change it *147 myself, and the lugs were too tight and he had one of these ‘L’ things and it was bending and I could not break the nut with that so he stayed in the car all night as it was raining. The next morning I went out and took a wrench out to him and we changed the tire for him.
“Q. He didn’t have any tire wrench in the car that night? A. No.
“Q. Did you look in the trunk of his car that night in connection with changing that tire? A. Only to take out his jack and tire wrench.
“Q. Did he have any other tools other than the ‘L’ lug wrench you have mentioned and the jack? A. Not that I noticed.”
Mr. Grubel’s testimony is that he took out of the trunk of the car the jack and “L” tire wrench. He also testified that it was raining and that he did not notice whether there were any other tools in the trunk of the car.
Mr. Arthur Yahr, owner of the Phelps Auto Company, testified that the defendant George Johnson purchased the 1951 Oldsmobile June 27, 1958. He was asked:
“Q. Did you prior to selling Johnson this car, did you know what was in it? A. No.
“Q. In the way of tools? A. No, I really don’t. I really don’t. I never go through them. I haven’t the slightest idea what was in it. I mean I know we have five tires to them and never pay any attention to what tools are in the car whatsoever.”
The record further discloses that the Big Portage lake premises in which the defendant resided were occupied by many other persons including the landlord, relatives, and itinerant fisherman. In fact, its transient operation could more or less be compared with the Grand Central railroad station in New York City.
Regarding the testimony of Mr. Mitchell — he identified a screw driver because of an apparent battering that it had received on the end. There were no other distinguishing *148 marks or features about the screw driver. This screw driver was found in defendant’s car with three other screw drivers which were not introduced into evidence and apparently had no connection with any of the crimes charged. This identification is far from positive.
While I do not doubt the sincerity of the witnesses as to their beliefs, I cannot determine that such an identification of a screw driver is of sufficient weight to support the convictions of burglary and larceny.
A careful examination of the record in this case leads me to conclude that the evidence and testimony do not measure up, either in quality or probative value, in order to meet the requirements of the well-established rule of law that no person shall be convicted of a penal offense unless the testimony be such as will sustain the rigid test of satisfying beyond a reasonable doubt.
In State v. Bradley (1954), 267 Wis. 87, 64 N. W. (2d) 187, where fragments found upon the clothing worn by the defendants on the night of the burglary as well as found on other articles taken from defendants’ car were identified with those taken from a safe which was stolen, this court affirmed the lower court’s dismissal upon the ground that the evidence did not point with moral certainty to the guilt of the defendants.
In Colbert v. State (1905), 125 Wis. 423, 436, 104 N. W. 61, this court stated the following to be a correct statement of the law:
“ ‘All the evidence produced by the state is circumstantial. There is no direct or positive evidence that the defendant committed the crime charged. And to warrant a conviction on circumstantial evidence each fact necessary to the conclusion sought to be established must be proven by competent evidence beyond a reasonable doubt, and all the facts necessary to such conclusion must be consistent with each other and with the main fact sought to be proved, and the circum *149 stances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged. The mere union of a limited number of independent circumstances, each of an imperfect and inconclusive character, will not justify a conviction. They must be such as to generate and justify full belief according to the standard rule of certainty. It is not sufficient that they coincide with and render probable the guilt of the accused, but they must exclude every other reasonable hypothesis. No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence, but the facts must be absolutely incompatible with innocence, and incapable of explanation upon any other reasonable hypothesis than that of guilt.”
An examination of the learned trial court’s decision in the counts concerning the Mitchell Standard station would seem to indicate that the trial court, while stating that it did not consider the blue scuff mark on the filling-station window, or the blue marks on the shoes or the blue paint on the shoes because the shoes were not proven to be the shoes of the defendant, actually did consider this together with the possession of one screw driver and the officer’s testimony as to the defendant’s explanation as to how the screw driver came to be in the defendant’s car in order to conclude that the defendant burglarized the Mitchell Standard station.
The language of this court in Bruno v. State (1920), 171 Wis. 490, 497, 177 N. W. 610, is particularly apropos in this case:
“. . . we are nevertheless compelled in a case such as this, involving a crime of such a grave nature and in which the verdict of guilty by the jury was followed by punishment measured by a sentence of ten years’ imprisonment in the state prison, to feel the necessity of bearing steadfastly in mind the well-established rule of law that no person shall be convicted of a penal offense unless the testimony be such *150 as will sustain the rigid test of satisfying beyond a reasonable doubt. [Emphasis supplied.] . . .
“The testimony in this case, in our judgment, when reasonably and fairly construed, creates no more than a suspicion that the defendant committed this offense. A suspicion merely is insufficient to support a judgment of conviction. Lonergan v. State, 111 Wis. 453, 460, 87 N. W. 455; State v. Vandewater (Iowa), 176 N. W. 883.”
Applying evidentiary facts in this case to the stated law, I must conclude that the evidence is of such an imperfect and inconclusive character, that it fails to meet the rigid test required to satisfy a court or jury that the defendant was guilty beyond a reasonable doubt of the crimes of burglary and larceny.
I am authorized to state that Mr. Justice Brown and Mr. Justice Currie join in this dissent.